UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-23587-CIV-DUBÉ

**CONSENT CASE**

DAVID YOUNG,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## **MEMORANDUM ORDER**

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #16) and the Motion for Summary Judgment filed by the Defendant (D.E. # 18) pursuant to the consent of the parties and an Order of Reference entered by the Honorable James Lawrence King, United States District Judge. The issue before this Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, David Young (hereinafter "Young" or "Plaintiff").

### **I. FACTS**

On October 28, 2008, Young filed an application for supplemental security income, which asserted an onset date of disability of May 1, 2008.[1] (R. 89-92). The application was denied initially and on reconsideration. (R. 27-28, 56-59, 62-66). Following a hearing on November 30, 2010, (R. 453-491), the ALJ issued a decision denying the request for benefits. (R. 14-26). A request for

---

[1] All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

review filed with the Appeals Council was denied. (R. 6-9).

The Plaintiff testified, at the time of the hearing on November 30, 2010, that he was 44 years of age and completed school through the eleventh grade. Young stated he had not worked since the date of filing, October 28, 2008. The Plaintiff further stated he lived in a house that two people occupied and his mother received government benefits because she was retired. (R. 461). According to Young, he had no children, was 5'11" tall, weighed 250 pounds, and had lost some weight. Young claimed that while he had a driver's license, he did not own a car and got around by taking public transportation. Additionally, Young claimed that within the previous 15 years he worked in the field of construction as a laborer. (R. 462-463).

Additionally, the Plaintiff asserted he did not clean, cook, wash clothes or do grocery shopping. Young testified he was able to bathe and dress himself and attended church. Young further asserted he had not traveled outside Miami-Dade country since October 2008 and at the time of the hearing was being treated by a doctor. (R. 463). According to the Plaintiff, his primary care doctor was Dr. Lyndia Ordillas-Jorge and his cardiologist was Dr. Chua. (R. 464). Young stated he had been treated by Dr. Ordillas-Jorge for a year and a half and prior to seeking treatment from Dr. Ordillas-Jorge, he had been treated at Jackson Memorial Hospital. (R. 464-465). Young testified there had not been any recent changes in his medication. (R. 465).

Young testified he had difficulty sitting and could sit for 20 minutes, after which time he experienced pain in the spinal region of his back. Further, the Plaintiff asserted he had difficulty standing and could stand roughly 20 to 30 minutes. (R. 466). Young testified he could walk 10 to 15 minutes and could lift or carry on average 8 pounds without difficulty. However, the Plaintiff testified he had arthritis "sometimes" in his hands and he experienced swelling in his feet. The Plaintiff testified the pain from his spine would travel down his legs. (R. 467).

Young testified he was unable to work because he had previously experienced heart attacks and his back was "messed up real bad." (R. 467-468). The Plaintiff testified if he attempted to walk longer than 10 to 15 minutes, he would experience a sharp pain in his spine and his heart rate would speed up resulting in difficulty breathing. Young stated he also had trouble sleeping and would experience pain in his chest, noting further that he used a sleep apnea machine. (R. 468). The Plaintiff stated because he had trouble sleeping, he was restless throughout the day and would often feel tired. (R. 468-469). With regard to his medication, the Plaintiff testified he had been prescribed nitroglycerin pills. (R. 469).

Thereafter, Lorin Lovely testified as a vocational expert (hereinafter "Lovely" or "VE"). (R. 470). The VE noted the Plaintiff's past relevant work was as a construction laborer, unskilled work at a "very heavy" exertional level. (R. 471-472).[2] The ALJ asked the VE the following question:

> ... assume you agree that I find the Claimant's testimony fully credible, there's no jobs, as he would be basically less than sedentary. He can only lift less than ten pounds, he could only sit for about 20 minutes... stand for about 20 to 30 minutes and walk for about 10 to 15 minutes, so it's [] less than eight hours in a day.

(R. 472).

The VE asserted the hypothetical claimant would be precluded from all work. The ALJ then asked the VE if any jobs existed in the national economy that the following hypothetical claimant could perform:

> We have a younger individual with a limited education, and the following exertional limitations: standing, walking, and sitting up to six hours in a normal day with normal two-hour breaks; lifting or carrying 20 pounds occasionally, 10 pounds frequently; pushing or

---

[2] Dictionary of Occupational Titles (4th ed. rev. 1991), details job descriptions within the United States workforce. Contained within such definitions are the specific vocational preparation skills (SVP) defined as, "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C.

3

> pulling 20 pounds occasionally, 10 pounds frequently; never climbing ropes, ladders or scaffolding; occasionally climbing stairs.

(R. 472).

The VE testified the hypothetical claimant would be able to perform the work of a ticket taker, DOT #344.667-010, light exertional level, SVP of 2 (20,000 jobs nationally, 950 jobs statewide and 80 jobs regionally); toll collector, DOT #211.462-038, light exertional level, SVP of 2 (188,000 jobs nationally, 12,000 jobs statewide and 1,200 jobs regionally; and ticket seller, DOT #211.467-030, light exertional level, SVP of 2 (188,000 jobs nationally, 12,300 jobs statewide and 1,100 jobs regionally. (R. 473-475). The VE stated his testimony was consistent with the DOT. (R. 475).

Next, the ALJ asked the VE the following hypothetical:

> ... the other factors being the same, we have a younger individual, [with] a limited education. For purposes of this, no relevant work, and with the following exertional/non-exertional limitations. Standing, walking, and sitting up to six hours in an eight hour day with normal two-hour breaks; lifting or carrying 20 pounds occasionally, 10 pounds frequently; pushing or pulling 20 pounds occasionally, 10 pounds frequently.
>
> With regard to non-exertional, never climbing ropes, ladders or scaffolding. And then occasionally climbing stairs, occasionally balancing, occasionally stooping, occasionally kneeling, occasionally crouching, and occasionally crawling. Would there be any jobs in the national economy, and please state the reasons why. Or stated differently, would it affect any of the jobs that you've already said existed?

(R. 475-476).

The VE testified the hypothetical claimant would still be able to do the jobs stated in the previous hypothetical. (R. 476). With regard to the previously mentioned job of a ticket taker, the VE testified such a position did not require working behind a booth and the job could be performed

with a sit/stand option. (R. 476-477). Further, regarding the job of a toll collector, the VE testified that job required sitting in a booth and reaching for money. However, the VE testified the job did not necessarily require frequent bending over to reach. The VE further testified the job was described in the <u>Revised Analyze Handbook</u> as requiring only frequent reaching in a direction and no stooping was present. (R. 477). The VE defined stooping as bending of the body downward and forward by bending the spine at the waist, requiring full use of lower extremities and the back muscles. (R. 478). Lovely further testified stooping did not require bending all the way to the floor, but if a person was to bend to the floor he would be using his lower extremities and back muscles. (R. 478-479).

The VE opined that if the definition of stooping changed to exclude the use of lower extremities, the jobs available would change. Lovely further testified his opinion would change because in booths a toll collector would be required to lean over and collect money, and that could be done on a frequent basis, depending on the traffic and the highway. (R. 479). The VE testified the number of toll collector jobs available in the economy was calculated within the months prior to the hearing. Lovely testified he used data from the Occupation Employment Statistics as well as Bureau of Labor Statistics that was updated "every couple of months." The VE asserted that the number of jobs available was associated with a classification of jobs and not individual jobs, and the VE performed calculations to reduce those numbers within the occupation. (R. 480).

The VE testified that there were 18 occupations within a particular category and he took the average of the number of jobs available because there was no way to find out an exact number. Further, Lovely opined his method of using an average of jobs available was used by him and his colleagues. (R. 481). The VE further reasserted he was not able to obtain an exact number of the toll collector jobs available but would estimate the number of jobs available. The VE also testified he

did not account for local reductions in toll collector positions available in the local county. Lovely asserted the number of jobs for a particular position could be reduced. (R. 482).

Regarding the position of a ticket taker, the VE opined that the position could require a person to stand in a booth behind a glass window or at an amusement park where the person would use a stool and sit down. The position of a ticket taker would not necessarily require bending over and the job as defined in the DOT did not include stooping. (R. 483). The VE testified the placement of the tickets, either in front of a person or behind them, would vary according to each position. However, the VE used the example of a ticket taker at a movie theater and testified that the machine would print the tickets at table level. (R. 484). Lovely asserted the distance between the customer and worker could be approximately a foot. (R. 485).

Counsel for the Plaintiff asked if the ticket taker would be required to slightly bend or lean forward. The VE testified that the job would require leaning forward or even slightly bending at the waist. (R. 486). Counsel for the Plaintiff referenced SSR 83-14 and argued all of the jobs mentioned by the VE would require stooping. (R. 487-488). The VE testified he did not say that the jobs would not require stooping and further testified that using the definition as defined by SSR 83-14, there would be stooping present in the job of a toll collector. (R. 489).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. However, a review of the medical records and the specific issues raised by the Plaintiff in his Motion for Summary Judgment shows the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

After a hearing and review of the record, the ALJ issued an opinion finding that the Plaintiff had the following severe impairments: ischemic heart disease, hypertension, obesity and a back

disorder. The ALJ further found that the Plaintiff did not have an impairment or combination of impairments that meets or equals a listing. (R. 19). The ALJ determined that the Plaintiff retained the residual functional capacity to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. The Plaintiff was found to be able to sit, stand and walk 6 hours in an 8-hour workday; and would need to avoid climbing ladders, ropes and scaffolds, and occasionally climb ramps and stairs. (R. 21). The ALJ found the Plaintiff was unable to perform his past relevant work, but considering the Plaintiff's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform. (R. 24-25). The ALJ concluded that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 26).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th

Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir.

1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that he/she is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff's first point of contention is that the ALJ erred by disregarding portions of Dr. Andriole's opinion. Additionally, because the ALJ gave considerable weight to opinions of Drs. Andriole and Carter, and Dr. Andriole included the limitation of occasional stooping within his assessment while Dr. Carter did not, the Plaintiff argues the ALJ created a discrepancy and thus his determination was not based on substantial evidence.

The Defendant argues the ALJ elicited valid vocational evidence of other work in the economy that the Plaintiff could perform. The Defendant asserts that the ALJ's residual functional capacity (hereinafter "RFC") of the Plaintiff was consistent with the RFC provided by Dr. Andriole.

Pursuant to Social Security Regulations, the Commissioner will use "medical sources, including [the claimant's] treating source, to provide evidence, including opinions, on the nature and severity of [the] impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing

of Impairments in appendix 1 to subpart P of part 404...[the] residual functional capacity, or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner." 20. C.F.R. § 416.927(d)(2)(parenthetical citations omitted). Statements made by a medical source that the claimant is "disabled" or "unable to work" are also administrative findings that are dispositive of a case and the determination of whether a claimant is disabled is an issue reserved to the Commissioner. 20 C.F.R. § 316.927(d).

The weight assigned to each medical source is dependent on several factors including the nature and extent of the relationship between the medical source and the claimant, the length of the relationship, the consistency of the relationship, as well as other factors such as whether the medical source examined the claimant and the type of treatment relationship they have with the claimant. 20 C.F.R. § 416.927(c). A non-examining source is a "physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical opinion or other opinion in [the] case." 20 C.F.R. § 416.902. Generally, the opinions of treating physicians are given more weight than non-examining, non-treating physicians, absent good cause to the contrary. Wilcox v. Comm'r of Soc. Sec., 2011 WL 4375021 (11th Cir.2011).

On January 26, 2009, James Andriole, D.O., completed a Physical Residual Functional Capacity Assessment of the Plaintiff. (R. 217-224). Dr. Andriole determined Young could lift 20 pounds occasionally and 10 pounds frequently; stand, walk and/or sit (with normal breaks) for 6 hours in an 8-hour workday; and push and/or pull an unlimited amount of weight. Dr. Andriole indicated the Plaintiff's exertional limitations were supported by musculoskeletal back pain with a gait grip intact; ischemic heart disease and an ejection fraction of 30%; no EKG ischemia was noted but the records indicated the presence of current angina. (R. 218).

The Plaintiff's postural limitations included occasional climbing ramps/stairs, balancing,

stooping, kneeling, crouching and crawling with no use of ladders/ropes/scaffolds. (R. 219). Dr. Andriole found the Plaintiff had no manipulative, visual, communicative or environmental limitations. (R. 220-221).

On June 5, 2009, Gary Carter, D.O., completed a Physical Residual Functional Capacity Assessment of the Plaintiff. (R. 297-304). Dr. Carter determined Young could lift 20 pounds occasionally, 10 pounds frequently; stand, walk and/or sit (with normal breaks) for 6 hours in an 8-hour workday; and push and/or pull an unlimited amount of weight. Dr. Carter based his exertional limitations of the Plaintiff's residual functional capacity on the Plaintiff's back pain, obesity, hypertension and coronary artery disease. Additionally, Dr. Carter noted the Plaintiff's motor and neurological functions were intact and Young's gait, grip and dexterity were within normal limits. The state agency physician further noted that the Plaintiff was capable of walking without an assistive device and the Plaintiff's ejection fraction was noted to be 30%. (R. 298). Dr. Carter found Young to have no postural, manipulative, visual, communicative, or environmental limitations. (R. 299-301).

On August 27, 2009, Dr. Carter completed a second Physical Residual Functional Capacity Assessment of the Plaintiff. (R. 318-325). Dr. Carter determined Young could lift 20 pounds occasionally, 10 pounds frequently; stand, walk and/or sit (with normal breaks) for 6 hours in an 8-hour workday; and push and/or pull an unlimited amount of weight. Dr. Carter found the Plaintiff continued to exhibit back pain, coronary artery disease, hypertension, obesity and angina equivalent. Dr. Carter further noted the Plaintiff continued to exhibit intact motor and neurological skills and his gait, grip and dexterity were within normal limits. Also, the Plaintiff was noted to walk without an assistive device and have an ejection fraction of 30%. (R. 319). Dr. Carter found the Plaintiff could occasionally climb ramps/stairs and ladders/ropes/scaffolds, and frequently balance, stoop,

kneel crouch and crawl. (R. 320). Dr. Carter further indicated the Plaintiff had no manipulative, visual communicative or environmental limitations. (R. 321-322).

The Plaintiff's initial argument contained within his first contention is that while Dr. Andriole's opinion found the Plaintiff to be "disabled," the opinion of Dr. Carter found the Plaintiff to be "not disabled." Further, the Plaintiff argues that the ALJ erred by giving considerable weight to the opinions of Drs. Andriole and Carter. The Plaintiff also argues that in giving the same amount of weight to both state agency examiners, the ALJ ignored portions of Dr. Andriole's opinion that limited the Plaintiff to occasional stooping.

The Defendant argues that the ALJ considered the record of medical evidence before determining the Plaintiff's RFC, and the ALJ considered Dr. Andriole's assessment of the Plaintiff and the assessment is consistent with the Plaintiff's RFC created by the ALJ.

Initially, the Court notes a finding of disability was not provided by either doctor, however, if even such a finding had been included within the record, such determinations are administrative findings and are not dispositive of the Plaintiff's disability.

Further, there is no "rigid requirement" that the ALJ specifically refer to every piece of evidence as long as the decision allows the court to conclude that the ALJ considered the medical condition as a whole. Hennes v. Comm'r of Soc. Sec. Admin., 130 Fed.Appx. 343, 348 n.11 (11th Cir. 2005) (citing Dyer v. Barnhart, 395 F.3d 1206, 12011 (11th Cir. 2005). Here, the ALJ cited to the findings of Dr. Andriole and accorded them "considerable weight." (R. 24). Although the ALJ did not specifically refer to Dr. Andriole's limitation of the nonexertional activity of occasional stooping, the ALJ properly took into account the Plaintiff's significant limitations, including the

nonexertional limitations in creating the Plaintiff's RFC.³ For example, while Dr. Carter found the Plaintiff was capable of occasionally climbing ramps, stairs, ladders, ropes and scaffolds, the ALJ took into account the Plaintiff's subjective complaints and testimony and restricted the Plaintiff to jobs that excluded such nonexertional activities.

Although the ALJ did not include the limitations of occasional stooping within the Plaintiff's RFC, the absence of the nonexertional limitation was harmless error. Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir.1983). In fact, the ALJ included the nonexertional limitation of occasional stooping within the second hypothetical posed to the VE. (R. 475). In response to the hypothetical question, the VE responded that based upon the limitations provided, including occasional stooping, the hypothetical claimant would be capable of performing the jobs enumerated within the first hypothetical. Thus, even though the Plaintiff's RFC, like in the first hypothetical, had not included occasional stooping as a limitation, pursuant to the testimony of the VE, the result would be the same; the Plaintiff would be capable of performing the same jobs, namely the jobs of a toll collector, ticket taker and ticket seller.

Next, the Plaintiff argues that when the VE applied the definition of stooping as identified in SSR 83-14, the VE testified that all of the enumerated jobs would require stooping.⁴

The Court declines to address the specifics of the definition of stooping. Even if the Court assumes that each job identified by the VE included stooping, the Plaintiff failed to provide any

---

³Limitations or restrictions which affect a claimant's ability to meet the demands of jobs, other than strength demands, are considered nonexertional limitations. 20 C.F.R. § 416.969a(a). Examples of nonexertional limitations includes difficulty functioning due to nervousness, anxiety, or depression or difficulty performing manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, crouching. See Id. at § 416.969a(c)(vi).

⁴Social Security Ruling 83-14, identifies stooping as "bending the body downward and forward by bending the spine at the waist." SSR 83-14, 1983 WL 31254 (S.S.A.) at *2. The VE identified stooping pursuant to the definition found in the DOT, "bending [the] body downward and forward by bending [the] spine at the waist, requiring full use of lower extremities and the back muscles." (R. 478).

evidence that a limitation to occasional stooping would significantly erode his ability to perform light, unskilled work. Additionally, there is no evidence contained in the record that the VE testified all jobs required stooping. The VE responded to the following question posed by the counsel for the Plaintiff:

> Q: Okay. That–then that is my question, and that is my question whether these jobs would require even slightly bending forward at the waist.
>
> A: Well, then I would say yes.

(R. 486).

Subsequent to the aforementioned testimony by the VE (cited by the Plaintiff in support of his argument), counsel for the Plaintiff stated, "And my argument is that the Social Security [R]uling, 83-14 describing stooping, is still the one that's in effect, and all these jobs would require stooping." (R. 488). The VE further clarified his previous testimony stating that stooping, as it was defined by SSR 83-14, would be included within the job requirements of a toll collector. (R. 489). This Court finds that there is no evidence that the ALJ failed to consider the VE's testimony and there is no evidence that the limitation of occasional stooping would erode the Plaintiff's ability to perform light unskilled work. The Court finds that the ALJ based the RFC of the Plaintiff on substantial evidence, including the testimony of the VE and no error is present.

The Plaintiff's second point of contention is that the ALJ erred in failing to demonstrate that Young was capable of engaging in other kinds of substantial gainful employment. Specifically, the Plaintiff argues the number of jobs available as cited by the ALJ regarding the job of a toll collector were not accurate. The Plaintiff further argues the VE testified the exact number of jobs in existence was unknown and the answer the VE provided at the administrative hearing was a "guesstimate."

The Defendant argues the regulations place the burden on the Commissioner to identify jobs that are in existence in the national, and not local economy. citing 20 C.F.R. § 416.966. Further, the Defendant argues that in addition to the position of a toll collector, the VE identified two other jobs that the Plaintiff could perform that existed in significant numbers within the national economy.

20 C.F.R. § 416.966 states that the Commissioner will consider "work that exists in the national economy when it exists in significant numbers either in the region in which [the claimant] lives or in several other regions of the county. It does not matter whether (1) work exists in the immediate area in which [the claimant] live[s]; (2) a specific job vacancy exists for the [the claimant]; or (3) [the claimant] would be hired if [he or she] applied for work." 20 C.F.R. § 416.966(a).

In the instant case, the Plaintiff argues that the numbers provided by the VE regarding the job of a toll collector were not "exact," and cited to examples within the regional economy where the number of jobs of a toll collector may have decreased. Because the aforementioned regulation instructs the Commissioner to consider work in existence in the national and not a local or regional economy, and specifically instructs the Commissioner to disregard work that exists in the region in which the Plaintiff lives, the Court finds the VE properly provided examples of the number of jobs that were in existence within the national economy that the Plaintiff would be capable of performing. The Court finds no error is present.

The Plaintiff's third point of contention is that the ALJ erred in failing to take into account the Plaintiff's sleep apnea as a severe limitation. The Defendant argues the Plaintiff provided no evidence that he was functionally limited by the use of a C-Pap machine and/or his sleep apnea.

The determination of whether an impairment is severe or not at step two of the sequential analysis is a threshold inquiry. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986).

However, the ALJ need only to conclude that the Plaintiff had a severe impairment. Heatly v. Comm'r of Soc. Sec., 382. F.Appx. 823, 825 (11th Cir. 2010)(unpublished). In Heatly, the Eleventh Circuit held that "[e]ven if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that Heatly had a severe impairment: and that finding is all that step two requires." Id. (citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir.1991) (applying the harmless error doctrine to social security cases), Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir.1987) ("the finding of any severe impairment... whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe" is enough to satisfy step two)).

In the instant matter, the ALJ found the Plaintiff had four impairments: ischemic heart disease, hypertension, obesity and a back disorder. (R. 19). The Plaintiff argues the presence of a sleep apnea was ignored by the ALJ.

However, within his determination, the ALJ specifically addressed the Plaintiff's limitation of sleep apnea and found it to be "not severe" because it did not cause more than minimal limitations in the Plaintiff's ability to perform basic work activities, noting a sleep study found the Plaintiff had only mildly obstructive sleep apnea. (R. 19, 368-369).[5] While the Plaintiff argues the results of the study may have been misestimated due to a malfunctioning pulse oximeter, the Plaintiff provided no alternative evidence that the study was not a valid indication of the severity of the Plaintiff's sleep apnea. "The claimant bears the burden of proving he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir.2003).

---

[5]Duplicates of the Interpretation of the Clinical Polysomnography were included within the record. (R. 413-414, 434-435).

Further, despite the ALJ's analysis regarding the Plaintiff's sleep apnea, under the application of <u>Heatly</u>, since the ALJ identified at least one severe impairment then considered all impairments in combination, whether severe or not, to determine whether Young was disabled, the Court finds no error is present.

### III. CONCLUSION

Based on the foregoing, the Court finds that the decision issued by the ALJ is supported by substantial evidence and that the correct legal standards were applied. Accordingly, it is **ORDERED AND ADJUDGED** as follows:

(1) The Motion for Summary Judgment filed by the Plaintiff (D.E. #16) is **DENIED**.

(2) The Motion for Summary Judgment filed by the Defendant (D.E. #18) is **GRANTED**.

(3) The decision of the Commissioner is **AFFIRMED**.

**DONE AND ORDERED** this ____7____ day of September, 2012.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE